**FILED**

DEC 12 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br>    100 F Street, NE<br>    Washington, DC  20549<br>                    Plaintiff,<br><br>v.<br><br>ADAM M. LLOYD, CARL D. UDLER, AND HOWARD J. MILLER,<br>                    Defendants. | Civil No.<br><br><br><br><br><br>**COMPLAINT**<br><br>CASE NUMBER 1:06CV02106<br>JUDGE: Colleen Kollar-Kotelly<br>DECK TYPE: General Civil<br>DATE STAMP: 12/12/2006 |

Plaintiff Securities and Exchange Commission (the "Commission") alleges for its complaint against Adam M. Lloyd ("Lloyd"), Carl D. Udler ("Udler"), and Howard J. Miller ("Miller") as follows:

**NATURE OF THE ACTION**

1.    This action concerns the violation of federal securities laws by Lloyd, Udler, and Miller in two separate instances of insider trading in the securities of PEC Solutions, Inc. ("PEC"). The first instance involved PEC's March 13, 2003 announcement that it was revising its financial guidance for the first quarter 2003 and for the year ending December 31, 2003 (the "March 2003 Announcement"). PEC's shares fell 37 percent the next day as a result of this unscheduled earnings announcement. On March 12, 2003, the day before the public announcement,

Lloyd sold short 6,000 shares of PEC on the basis of material, non-public information he misappropriated from his father, who was then the Chief Financial Officer of PEC. Lloyd covered his short sale on March 18, 2003 and made a profit of $41,540. Lloyd tipped Udler about the March 2003 Announcement and Udler, in turn, tipped Miller. Udler sold 625 shares of PEC on the day before the March 2003 announcement, and thereby avoided a loss of approximately $3,713. Miller purchased put options in PEC a few days before the March 2003 Announcement and subsequently sold those shares for an $11,300 profit.

2. The second instance of insider trading involved the acquisition of PEC by Nortel Networks Corp. ("Nortel"). Prior to the opening of the market on April 26, 2005 Nortel announced its tender offer to purchase PEC (the "April 2005 Announcement"). In the weeks prior to the April 2005 Announcement, Lloyd misappropriated material, non-public information from his father regarding the acquisition and, on the basis of that information, purchased 10,400 shares of PEC which he sold after the April 2005 Announcement for a profit of approximately $30,480. Lloyd tipped Udler about the April 2005 Announcement and Udler, in turn, tipped Miller. Udler and Miller each purchased PEC call options in the weeks prior to the April 2005 Announcement and liquidated their options on the day of the announcement for profits of approximately $49,251 and $31,260, respectively.

2

3. By conduct detailed in this Complaint, Lloyd, Udler, and Miller violated Sections 10(b) and 14(e) of the Securities Exchange Act of 1934 [15 U.S.C. § 78j(b), 78n(e)] (the "Exchange Act") and Rules 10b-5 [17 C.F.R. § 240.10b-5] and 14e-3 [17 C.F.R. § 240.14e-3] thereunder, through the means or instrumentalities of interstate commerce, the mails or the facilities of a national securities exchange.

## JURISDICTION

4. The Court has jurisdiction over this action under Sections 21A and 27 of the Exchange Act [15 U.S.C. §§ 78u-1 and 78aa].

## DEFENDANTS

5. Lloyd, age 36, is a Maryland resident. His father was the Chief Financial Office of PEC during the relevant time period.

6. Udler, age 36, is a Maryland resident. He is a childhood friend of Lloyd.

7. Miller, age 38, is a Maryland resident. He is a friend of Udler.

## RELATED PARTY

8. PEC Solutions, Inc. is a Fairfax, Virginia based government information technology services entity.

3

## FACTS

### The March 2003 Announcement

### Lloyd Traded on Material, Non-Public Information Misappropriated From his Father

9. On March 13, 2003 PEC announced it was revising its financial guidance for the first quarter and for the year ending December 31, 2003. As a result of this unscheduled earnings announcement PEC's shares fell 37 percent the next day. Lloyd's father, the then Chief Financial Officer of PEC, learned a few days prior to the March 2003 Announcement that PEC was not going to meet its quarterly or yearly expectations. Lloyd's father worked at home on documents that contained material, non-public information regarding PEC's financial status. Prior to the March 2003 Announcement, Lloyd misappropriated from his father information that PEC was going to revise downward its previously announced financial guidance.

10. After misappropriating the information from his father, on March 12, 2003, the day before the unscheduled March 2003 Announcement, Lloyd sold short 6,000 shares of PEC at $16.20 per share and also sold short 1,000 shares of PEC at $16.30 per share. Lloyd covered his short sales on March 18, 2003 and made a profit of $41,540.

### Lloyd Tipped Udler Who Then Traded on Material, Non-Public Information

11. On or before March 12, 2003 Lloyd tipped Udler that PEC was going to publicly announce "adverse news" within a couple days and advised him to sell any shares he held in PEC.

12. Udler, Lloyd's childhood friend, knew that Lloyd's father was the Chief Financial Officer of PEC and believed that Lloyd's tip was based on information obtained from Lloyd's father.

13. Based on Lloyd's tip, Udler sold 625 PEC shares at $15.75 per share on March 12, 2003, avoiding a loss of $3,713.

### Udler Tipped Miller Who Then Traded on Material, Non-Public Information

14. On or before March 13, 2003 Udler tipped Miller that PEC was going to announce "adverse news" and inquired as to how one could make "some money" in the market armed with the information that an entity's stock price would most likely decline in the near future.

15. On or before March 13, 2003 Miller and Udler decided to purchase options together. Miller agreed to place the option trades in his account.

16. On March 13, 2003 Miller purchased 20 March series put options with a strike price of $17.50 and sold those options on March 17, 2003 for a profit of $11,300.

5

### The April 2005 Announcement

#### Lloyd Traded on Material, Non-Public Information Misappropriated From his Father

17. Prior to the opening of the market on April 26, 2005, Nortel announced its tender offer to purchase PEC (the "Merger") at a price of $15.50 per share. As a result of this announcement, PEC's shares rose 35 percent the next trading day.

18. Lloyd's father learned that Nortel was interested in purchasing PEC on March 17, 2005.

19. On March 28, 2005 Lloyd purchased 1,800 shares of PEC at $12.15 per share.

20. Sometime prior to March 28, 2005, Lloyd misappropriated from his father information that Nortel intended to acquire PEC.

21. On or before March 29, 2005 Lloyd's father learned the general terms of the Merger, including the agreed upon price of $15.50 per share.

22. On April 4 and 5, 2005 Lloyd purchased 5,000 and 3,600 PEC shares, respectively.

23. Sometime prior to April 4, 2005, Lloyd misappropriated from his father, either directly or indirectly, information that Nortel intended to acquire PEC at a price of $15.50 per share.

24. Between March 28, 2005 and April 5, 2005 Lloyd purchased a total 10,400 PEC shares on margin, increasing his previously held 1600 share position by 650% in approximately one week.

25. Lloyd sold his 10,400 shares at $15.50 on June 3, 2005, realizing a profit of approximately $30,480.

### Lloyd Tipped Udler Who Then Traded on Material, Non-Public Information

26. On or before April 1, 2005 Lloyd tipped Udler that PEC was being acquired by Nortel.

27. On or before April 11, 2005 Lloyd tipped Udler to the $15.50 per share acquisition price and the general timing of the Merger.

28. Sometime between April 11 and April 19, 2005, Lloyd tipped Udler to a new Merger announcement date that was within one business day of the actual announcement date of April 26, 2005.

29. On or before April 19, 2005 Lloyd tipped Udler that the April 2005 Announcement would be made on or before April 23, 2005.

30. Based on Lloyd's tip, Udler purchased 200 May series call options on April 19, 2005 at a strike price of $12.50 and liquidated them on April 26, 2005, the actual day of the April 2005 Announcement, at a profit of $48,655.

## Udler Tipped Miller Who Then Traded on Material, Non-Public Information

31. On or before April 1, 2005 Udler tipped Miller that PEC was being acquired.

32. On or before April 11, 2005 Udler tipped Miller to the share price and announcement date of the Merger.

33. Miller knew that Udler's source was Lloyd and that Lloyd's father was the Chief Financial Officer of PEC.

34. Based solely on Udler's tip, Miller purchased a total of 148 May series call options with a strike price of $12.50 during April 2005.

35. Miller liquidated all of his call options on April 26, 2005, the day of the Merger announcement, for a profit of $40,700.

**FIRST CLAIM – Violation of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder [15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5]**

36. The Commission incorporates the allegations in paragraphs 1-35 as though fully set forth in this paragraph.

37. Lloyd, Udler, and Miller engaged in the trading described above while in possession of material, non-public information.

38. At all relevant times herein, Lloyd knew that any non-public information regarding PEC that he misappropriated from his father, including the

information about the March 2003 Announcement and the April 2005 Announcement, was confidential.

39. At all relevant times herein, Lloyd's father expected that Lloyd would keep confidential any non-public information he learned, directly or indirectly, from him about PEC.

40. Lloyd knew, or was reckless in not knowing, that he violated his duty of trust and confidence to his father by trading in PEC securities before the March 2003 and April 2005 Announcements based on material non-public information he misappropriated from his father and by tipping Udler regarding those events.

41. Udler knew, or should have known, that the information he received from Lloyd about PEC shortly before the March 2003 and April 2005 Announcements was material non-public information and that the information had been disclosed in violation of a duty of trust and confidence.

42. Miller knew, or should have known, that the information he received from Udler about PEC shortly before the March 2003 and April 2005 Announcements was material non-public information and that the information had been disclosed in violation of a duty of trust and confidence.

43. By reason of the foregoing, Lloyd, Udler and Miller, each violated Section 10(b) of the Exchange Act and Rule 10b-5.

44. Unless restrained and enjoined, Lloyd, Udler and Miller will continue to violate those statutory and regulatory provisions.

## SECOND CLAIM – Violation of Section 14(e) of the Exchange Act and Rule 14e-3 Thereunder [15 U.S.C. § 78n(e) and 17 C.F.R. § 240.14e-3]

45. The Commission incorporates the allegations in paragraphs 1-44 as though fully set forth in this paragraph.

46. At the time of the tipping and trading in the securities of PEC described above in April 2005, Nortel had taken a substantial step or steps toward commencing a tender offer for PEC securities.

47. Lloyd, Udler and Miller purchased PEC securities while in possession of material information relating to the tender offer, and while knowing or having reason to know that the information was non-public and had been acquired directly or indirectly from Lloyd's father.

48. By reason of the foregoing, Lloyd, Udler and Miller each violated Section 14(e) of the Exchange Act and Rule 14e-3.

49. Unless restrained and enjoined, Lloyd, Udler and Miller will continue to violate those statutory and regulatory provisions.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff Commission respectfully requests that this Court enter Orders:

(i)     permanently enjoining Lloyd, Udler and Miller from violating Sections 10(b) and 14(e) of the Exchange Act [15 U.S.C. § 78j(b), 78n(e)] and Rules 10b-5 [17 C.F.R. § 240.10b-5] and 14e-3 [17 C.F.R. § 240.14e-3] thereunder;

(ii)    directing that Lloyd, Udler and Miller disgorge all profits realized from the unlawful conduct alleged herein, plus prejudgment interest;

(iii)   directing that Lloyd, Udler and Miller pay civil money penalties pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1]; and

(iv)    granting such other relief as this Court may deem just and equitable.

Respectfully Submitted,

*/s/ Mark Adler*
Mark Adler (Deputy Chief Litigation Counsel)
Mark J. Kreitman (DC BAR No. 260828)
J. David Fielder
James Eichner (DC Bar No. 460587)
Liban Jama (DC Bar No. 472951)

Attorneys for Plaintiff
Securities and Exchange Commission
100 F Street, NE
Washington, DC  20549-4010A
Telephone:  (202) 551-4402 (Adler)
Facsimile:   (202) 772-9245 (Adler)
AdlerMA@sec.gov

Dated:  December 12, 2006

E
06-2106
CKK

JS-44
(Rev.1/05 DC)

CIVIL COVER SHEET

### I (a) PLAINTIFFS
Securities and Exchange Commission

11001

### DEFENDANTS
Adam M. Lloyd, Carl D. Udler, and Howard J. Miller

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT ___Montgomery___
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Mark Adler
Securities and Exchange Commission
100 F Street, NE
Washington DC 20549-4010A
Telephone: 202-551-4402
Fax: 202-772-9245

CASE NUMBER 1:06CV02106
JUDGE: Colleen Kollar-Kotelly
DECK TYPE: General Civil
DATE STAMP: 12/12/2006

### II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ⊙ 1 U.S. Government Plaintiff
- ○ 2 U.S. Government Defendant
- ○ 3 Federal Question (U.S. Government Not a Party)
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

### III CITIZENSHIP FOR PLAINTIFF A...

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

### IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**○ A. Antitrust**
☐ 410 Antitrust

**○ B. Personal Injury/Malpractice**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

**○ C. Administrative Agency Review**
☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**○ D. Temporary Restraining Order/Preliminary Injunction**
Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**⊙ E. General Civil (Other)    OR    ○ F. Pro Se General Civil**

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

Federal Tax Suits
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☒ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

— 0

C/FJ ON All

| ☐ G. *Habeas Corpus/ 2255*<br>☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ H. *Employment Discrimination*<br>☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ I. *FOIA/PRIVACY ACT*<br>☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ J. *Student Loan*<br>☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
|---|---|---|---|
| ☐ K. *Labor/ERISA (non-employment)*<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ L. *Other Civil Rights (non-employment)*<br>☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ M. *Contract*<br>☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ N. *Three-Judge Court*<br>☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ Multi district Litigation   ☐ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

15 U.S.C. § 78j(b), 15 U.S.C. § 78n(e) Violation of Federal Securities Laws; Insider Trading

**VII. REQUESTED IN COMPLAINT**   CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 ☐   DEMAND $   Check YES only if demanded in complaint  JURY DEMAND: ☐ YES ☒ NO

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   ☐ YES ☒ NO   If yes, please complete related case form.

DATE 12/12/06   SIGNATURE OF ATTORNEY OF RECORD  *Mark Odle*

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.